**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:22-cr-259-TNM** |
| **LUKE LINTS** | |
| **Defendant.** | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Luke Lints to ten months' incarceration, three years of supervised release, $2,000 in restitution, and the mandatory $100 special assessment.

## I.    INTRODUCTION

The defendant, Luke Lints, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

Lints, a farmhand and gardener from northern Michigan, joined the rioters who stormed

---

[1] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

the West Terrace of the Capitol. As the police line collapsed, officers retreated into a tunnel (LWT tunnel) that led to an entryway into the building. Rioters then invaded the LWT tunnel. At approximately 3:11 p.m., Lints entered the LWT tunnel and pushed past other rioters towards the front of the police line. Lints and others engaged in a coordinated push against the line of Metropolitan Police Department (MPD) and United States Capitol Police (USCO) officers. Shortly thereafter, Lints obtained a police riot shield and used it to prevent a police officer from closing the metal door to separate the police from the rioters. He then pushed the police shield against a police shield being held by an officer.

The government recommends that the Court sentence Lints to ten months' incarceration, which is in the middle of the advisory Guidelines' range of 8-14 months. That is range calculated by both the parties in their plea agreement and by the Probation Office of this Court. A ten-month sentence reflects the gravity of Lint's criminal conduct on January 6, along with his continued efforts to minimize that conduct and blame police officers and the F.B.I. for the violence at the Capitol on January 6.

## II.    FACTUAL BACKGROUND

### A.    The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF No. 41, for a short summary of the January 6, 2021, attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

This Court is well aware of the protracted and violent attack on the officers on the West

Front and in the Lower West Terrace tunnel after presiding over a bench trial in August of last year involving other defendants who participated in that attack. *See United States v. McCaughey et al*, D.D.C. 1:21-cr-00040 (TNM). As the Court has heard from the government in sentencing hearings involving other January 6 defendants, the violence inflicted by the mob against the police in the Lower West Terrace tunnel was both protracted and brutal. Officers were kicked, punched, beaten, tazed, and sprayed, but still they held the line. It is not an exaggeration to state the actions of these officers in thwarting the mob at the Lower West Terrace entrance likely saved the lives of others, including members of Congress.

**B.      Lints' Role in the January 6, 2021 Attack on the Capitol**

On January 5, 2021, Lints boarded a bus in Traverse City, Michigan traveling to Washington, D.C. to attend the Stop the Steal rally. By coincidence, Lints ran into his mother, who was also traveling on the bus to Washington for the rally. The two ended up staying together at a friend's apartment, and the next day went sightseeing before attending the rally. Following the speeches, Lints and his mother walked to the Capitol. On the way, however, Lints' mother fell ill, and an ambulance was called to take her to a hospital. While his mother was being transported to the hospital, Lints continued marching towards the Capitol, where he entered the restricted grounds and made his way onto the Lower West Terrace.

*Lints' Conduct Inside the Tunnel*

At approximately 3:11 p.m., Lints entered the LWT tunnel and pushed his way past other rioters towards the front of the police line:



**Figure 1:** *Screenshot of Government's Exhibit 1 at 3:55 (3:11:25 p.m.) with Lints circled*

Shortly thereafter, Lints was on the very front lines as the rioters engaged in a

coordinated "heave ho" against police officers:



**Figure 2:** *Screenshot of Government's Sentencing Exhibit 2 at 20:47, with Lints circled in yellow and his co-defendant, Bernard Sirr, circled in red*

4

During the heave ho, MPD Officer D.H. was crushed between the rioters and a door. Moments later, Lints obtained a police shield which he used to push against officers guarding the entrance to the Capitol. As an officer attempted to shut a metal door creating a barrier between the rioters and police, Lints used his stolen police shield to block the door from closing:



**Figure 3:** *Screenshot of Government's Sentencing Exhibit 2 at 22:08, with Lints circled*

Lints then used his stolen shield to push back against an officer:



**Figure 4:** *Screenshot of Government's Sentencing Exhibit 2 at 22:12, with Lints circled in yellow. Defendant Patrick McCaughey is circled in red*

As another member of the crowd yelled at police, "get the fuck out of my house!", Lints continued to hold his stolen shield and use it to push back against the officers:



**Figure 5:** *Screenshot of Government's Exhibit 2 at 24:34 with Lints highlighted*



**Figure 6:** *Screenshot of Government's Exhibit 1 at 6:14 (3:13:44 p.m.) with Lints circled*

A few seconds later, Lints handed his stolen police shield to another rioter and patted him on the back. Lints then passed a second police shield forward that was handed to him and obtained a third shield that was passed to him. At 3:15 p.m., Lints rushed towards the police line while holding the stolen shield:



**Figure 7:** *Screenshot of Government's Exhibit 1 at 7:44 (3:15:14 p.m.) with Lints circled*

Lints remained in the tunnel as the rioters engaged in a second coordinated "heave ho" group thrust against the police at 3:16 p.m.[2] Two minutes later, at 3:18 p.m., Lints was ejected from the tunnel as officers began to push forward and retake ground.

---

[2] *See* Government's Exhibit 1 from 9:21 to 10:03 (3:16:51 p.m. to 3:17:33 p.m.).



**Figure 8:** *Screenshot of Government's Exhibit 3 at 4:58 with Lints circled*

### *Lints' Social Media Posts After January 6*

Following the events of January 6, 2021, Lints appears to have shown little remorse for his involvement in the events at the U.S. Capitol. Instead, he has continued to push a false narrative that he was a peaceful protester only in the tunnel to prevent police from attacking the rioters. After being relatively quiet on social media after January 6, 2021, Lints began posting more often following his arrest in this case. On January 7, 2023, as this case was pending, Lints gave an interview to the podcast, "January 6 Exposed," in which Lints stated that he only grabbed a police shield to prevent officers from assaulting protesters.[3] He also falsely claimed that he prevented the officer from closing the door within the tunnel because, "I saw people stuck on the other side and I did my best to protect them by keeping that door open so they could get out."[4]

---

[3] Lints' interview, as well as a rough transcript of his statement, is attached as Government's Exhibits 4 and 5.
[4] Government's Exhibit 4 at 5:27 to 5:44.

Since his interview, Lints has continued to post on social media that the police were the aggressors in the tunnel. On January 17, 2023, Lints responded directly to United States Capitol Police Officer Harry Dunn, telling him that officers in the tunnel were "ABSOLUTELY OUT OF CONTROL" and "beating innocents over the head with batons" while accusing an officer of killing a woman in the crowd:[5]

---

[5] Although commonly repeated on social media, this claim has been widely refuted.  *See e.g.* Pilar Melendez, *Capitol Rioter Rosanne Boyland Died From Drug Overdose, Not Trampling: M.E.*, Daily Beast (Published April 7, 2021 4:09PM ET) (available at https://www.thedailybeast.com/capitol-rioter-rosanne-boyland-died-from-acute-amphetamine-intoxication); Fox 5 Digital Team, *Capitol rioters' causes of death released; Capitol police officer's still 'pending'* Fox 5 D.C. (Published April 7, 2021, Updated 3:25PM) (listing official cause of death for Boyland as accidental acute amphetamine intoxication) (available at https://www.fox5dc.com/news/capitol-rioters-cause-of-death-information-released-capitol-officers-cause-of-death-pending); Ayman Mohyeldin, *American Radical: Episode 4: Cause of Death*, MSNBC Podcast (noting MPD internal affairs investigation cleared officer and reviewing ME's report and other evidence with two independent medical examiners, both citing causes of death unrelated to officer's actions) (transcript available at https://www.msnbc.com/msnbc-podcast/transcript-cause-death-n1288906); K2theSky, *Officers didn't kill Rosanne; the Mob did* YouTube (reviewing available video footage to detail 8 minutes Boyland was unconscious under crowd prior to officer's actions) (available at https://www.youtube.com/watch?v=G6tMTKQG4CQ)



**Figure 9:** *Screenshot of Luke Lint's Twitter Post from January 17, 2023*

Two days later, Lints' reposted a body worn camera video of police officers in the tunnel, calling them "evil fucks" and "an embarrassment to our country:"

10



**Figure 10:** *Screenshot of Luke Lint's Twitter Post from January 19, 2023*

Following his plea of guilty, Lints has continued to post on Twitter, minimizing his conduct forming the basis of his conviction and again falsely claiming that he went into the tunnel due to witnessing police brutality:



**Figure 11**: *Screenshot of Luke Lint's Twitter Post from March 8, 2023*

Lints also blames the events of January 6, 2021 on the F.B.I., writing in a May 18, 2023 Twitter post that the agency is "the federal bureau of instigation regarding J6:"

11



**Luke Lints** ✓
@Trail8lazer7
···

Durham report comes out, "FBI" we have investigated ourselves and concluded we will never do anything like that again. Oh and we will never interfere in an election again, oh, and we won't try to censor you, oh, we definitely aren't the federal bureau of instigation regarding J6, oh we definitely will never, ever wield the ring of power in our own self interest again.

5:04 AM · May 18, 2023 · **29** Views

**Figure 12**: *Screenshot* of *Luke Lint's Twitter Post from May 18, 2023*

### III.    THE CHARGES AND PLEA AGREEMENT

On July 27, 2022, a federal grand jury returned an indictment charging Luke Lints with Six counts, including Count One, Interfering with Law Enforcement During a Civil Disorder, 18 U.S.C. § 231(a)(3). On, February 24, 2023, Lints was convicted of that offense based on a guilty plea entered pursuant to a plea agreement.

### IV.    STATUTORY PENALTIES

Sentencing now faces sentencing on Count One, Interfering with Law Enforcement During a Civil Disorder, 18 U.S.C. § 231(a)(3).

As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, Lints faces up to 5 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, and a mandatory special assessment of $100.

### V.    THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should

12

be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The Guidelines calculations in the Final PSR (ECF No. 56) mirror those to which the parties stipulated in the plea agreement and are correct. The U.S. Probation Office calculated Lints' criminal history as category I, which is not disputed. PSR ¶ 61.  Accordingly, based on a total offense level of 11 and a criminal history category I, Lints' guideline imprisonment range is 8 to 14 months' imprisonment.

## VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.    Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 was a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on his or her individual conduct, each individual who entered the Capitol grounds and assaulted police on January 6 did so under the most extreme of circumstances, to which their conduct directly contributed. As a person entered

the Capitol grounds, they would—at a minimum—have crossed through numerous barriers and barricades, heard the throes of a mob, and smelled chemical irritants in the air. Depending on the timing and location of their approach, in addition to their own acts of violence, they likely would have observed other extensive fighting with police.

This Court has already sentenced many January 6 defendants, including defendants who committed crimes in and around the LWT tunnel in close proximity to Lints. This Court, in determining a fair and just sentence, should look to several critical factors to hold Lints accountable for his violent conduct on January 6, 2021.

The government has been unable to determine how long Lints remained on Capitol grounds. However, Lints was in the LWT tunnel for approximately 7 minutes, at the height of some of the worst assaults on police officers. During his stint in the tunnel, Lints remained on the front lines of rioters facing off against the police and participated in a heave-ho series of thrusts against those officers. He then utilized three stolen police shields, using one to prevent police officers from creating a barrier between themselves and the rioters, and passing other shields to other rioters. Despite pleading guilty to civil disorder, Lints continues to justify his presence in the tunnel, blaming the events of the day on others and fails to understand the seriousness of his conduct. These facts fully support the government's recommended sentence of ten months' incarceration.

### B.  The History and Characteristics of the Defendant

Lints has no prior arrests or convictions. His employment record is spotty, but Lints has been employed for most of the past eight years. Lints' upbringing appears to have been unstable

and difficult, as described in paragraphs 70 through 73 of the PSR. He has complied with his conditions while on pretrial release.

### C.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Lints' criminal conduct on January 6, and his continued desire to mitigate the seriousness of his offense and blame others for his conduct, is the epitome of disrespect for the law.

### D.     The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[6] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

Although Lints has pled guilty and is entitled to a two-point reduction for acceptance of responsibility, Lints still does not appear to appreciate the full harm of his conduct. Lints entered

---

[6] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

the tunnel at a particular inflection point in the rioter's battle against the police, participated in that assault, and helped further the chaos inside the tunnel. Despite this, Lints continues to justify his behavior, falsely asserting that it was all due to police brutality and going so far as to call the police officers that day "evil fucks," a "disgrace," and an "embarrassment to our country." He has not shown genuine remorse. A ten-month sentence of incarceration is justified to provide specific deterrence to Lints and instill upon him that his conduct that day was both illegal and morally reprehensible.

### E.    The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.      Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing

philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[7]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[8]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. There are many January 6 cases pending similar to Lints, where individuals inside the LWT tunnel

---

[7] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[8] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

engaged in a collective "heave ho" against law enforcement but did not directly assault police officers. However, none have progressed to sentencing. The single most similar case to Lints is that of his co-defendant, Bernard Sirr, who is scheduled to be sentenced on May 23, three days before Lints. Their conduct is so similar that the government is recommending the exact same sentence of 10 months' incarceration. While Sirr attempted to enter the tunnel a second time and yelled at officers to "be on the right side of history," he also expressed true remorse for his conduct, unlike Lints. Sirr and Lints are most comparable to each other and should be sentenced similarly.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011).[9] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C.

---

[9] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), which "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, does not apply here. *See* 18 U.S.C. § 3663A(c)(1).

Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Lints must pay $2,000 in restitution to the Architect of the Capitol, which reflects in part the role Lints played in the riot on January 6.[10] Plea Agreement at ¶ 12. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,734,783.14" in damages, a figure based on loss estimates supplied by the Architect of the Capitol in April 2022. *Id.* Lints' restitution payment must be paid to the Clerk of the Court, who will forward the payment to the Architect of the Capitol. *See* PSR ¶ 124.

## VIII. CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of ten months' incarceration, three years of supervised release, $2,000 in restitution, and the mandatory $100 special assessment.

---

[10] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:

Stephen J. Rancourt
Assistant United States Attorney, Detailee
Texas Bar No, 24079181
601 D Street, N.W.
Washington, D.C. 20530
(806) 472-7398
stephen.rancourt@usdoj.gov